On behalf of the Virginia Surety Company, Ms. Melissa Anderson. On behalf of the public We thought that we'd stand here together and perhaps I will follow her. Just don't interrupt each other. Would you identify yourself, please? Because we already identified Ms. Anderson. What's your name? Ed McGinnis. Thank you. You may proceed. Good morning. May it please the court. Melissa Anderson on behalf of Virginia Surety Company, one of the appellants in this matter. As you know, the issue presented here today is whether the underlying circuit court erred in granting summary judgment in favor of general casualty by finding that they had no duty to defend or indemnify their named insured professional manufacturers' representatives, which I will refer to as PMR. As an initial matter, whether general casualty has a duty to defend must be considered in light of the broad nature and scope of a carrier's duty to defend in Illinois. If the underlying complaint alleges facts, even potentially within the policy's coverage, a duty to defend must be found. General casualty was the commercial general liability carrier for PMR. PMR tendered its defense of an underlying third-party complaint filed against it by Home Depot. Home Depot and PMR had entered into an in-store merchandising agreement pursuant to which PMR was to set up certain display shelves. Terrence German was injured in the course of his employment and tendered this matter to my client, Virginia Surety, who is the employer's liability workers' comp carrier and general casualty. Virginia Surety has been defending and general casualty has denied coverage. The plain language of the general casualty policy supports that general casualty has a duty to defend PMR in connection with this matter. The coverage grant in the policy provides that general casualty has a duty to defend and to pay those sums that PMR was legally obligated to pay because of bodily injury caused by the occurrence. That's not in dispute in this case. Rather, general casualty maintains that it's two exclusions, the employer's liability exclusion and the contractual liability exclusion applied to preclude coverage. Both of these exclusions have the insured contract exception to the exclusion, which applies in this matter such that the exclusion should not apply. Insured contract is that part of any contract or agreement under which PMR has assumed the tort liability of another. For purposes of coverage, tort liability is liability that would be imposed by law in the absence of this agreement. And the issue is whether the indemnification clause was an insured contract, is it? Yes, the issue is whether this in-store merchandising agreement, whether the indemnification language in there is an insured contract. And the Virginia Surety case, not the company, the case seemed to hold otherwise, correct? No, Your Honor, I believe Virginia Surety is entirely distinguishable from this matter. There's critical distinctions there. Most importantly, that case dealt with whether or not there was a Kotechi affirmative defense waiver. And in that case, the focus of the court was whether or not that indemnification language was the employer's anticipatory waiver of its Kotechi cap on its contribution exposure. I think what's most distinguishable and what's most critical here is to look at the causes of action that were raised in the Virginia Surety case versus the cause of action that's been raised here. In Virginia Surety, you had one count contribution claim. In our case, we've got an express indemnification claim. In the Virginia Surety case, the distinction between contribution and indemnity is important. Because in that case, under no circumstances would the insured be held liable for the tort liability of another. They were only being sued for contribution where they were being asked to pay for all of their pro-rat share of common liability. I understand that difference, but wasn't an issue in that case, a specific issue addressed by the court at least, whether that indemnification clause was an insured contract? Yes, but I think you can only look at that indemnification language. And particularly for purposes of a duty to defend, you need to look at it by comparing the policy language, not just focusing on the contract that's at issue in that case, focusing on the contract, the underlying claims being advanced, and in connection with the policy language. Virginia Surety was not decided in a vacuum. The court was, in that case, was focusing on whether or not there was a Kotechi waiver there by looking at the language. But they decided that in the context of a contribution claim, which is quite simply what we don't have here. Additionally, the... So are you saying that if the claim was the same in that case, that the outcome would have been different? Absolutely. Even based on them finding that that was an insured contract? Yes, I believe that decision was decided in the context of a contribution claim. And because the duty to defend, if there's even a potential that the general casualties insured in this case, PMR, can be found liable for the tort liability of another, there is a duty to defend. And that's exactly what they're facing here. The way this is going to play out, if PMR is found liable in the contraction indemnification count, they are necessarily being found liable for the tort liability of another. That just was not presented in the Virginia Surety case. Because the potential is there, there is a duty to defend. Well, I'm familiar with Virginia Surety. I think it cites my dissent. And I think I disagree with you to the extent that what the Supreme Court decided was not the only issue raised. The issue that was raised was exactly the same issue that you're raising, which was whether or not it was or wasn't an insured contract. So it may be that the analysis isn't necessarily applicable, but the philosophy of Virginia Surety is. That is, is that this case and that case, somebody was claiming that there was an insured contract. Is that correct, at least? Is that a fair statement? That somebody was making the statement that there was an insured contract. The analysis doesn't necessarily apply to this case because you're claiming the facts are slightly different. But at least Virginia Surety did talk in terms of somebody making a claim that was an insured contract, and the argument wasn't accepted or adopted by the Supreme Court. Whether or not we adopt your argument is based upon whether we determine whether or not it is an insured contract or not, correct? Correct. Okay. And what, in layman's terms, do you believe an insured contract is? And I say layman because you can make it so complex if you talk in terms of legalese. I think that you have to look to the specific language and ask if there is language there. Well, I think that what we have learned from all of these cases, including the cases cited by general casualty, is that there is no rule in terms of comparing. You have to look at each contract individually. And so I don't think very broad statements can be made, and I think it needs to be looked at as a case-by-case basis. But I think you need to look to see if there's any provisions in there without limiting language. And that would support the notion that the indemnity provided was not intended to cover claims resulting from an indemnity's own negligence. I think that's what we have in this case. Subparagraph A of the in-store merchandising agreement contains absolutely no limiting language. Would it be appropriate to say that an insured contract is where A says I will be liable and I will pay for B's negligence? Yes, which is what I think we have here. Would that be the essence or the condensation of what an insured contract is? Yes. Thank you. Wasn't the language in our case and Virginia Schertie the same with respect to tort liability? It was distinguishable in that case. They did not have the definition of tort liability. Oh, the definition is the same in Virginia Schertie and in general casualty's policy, the same definition. Other than the additional issues that were raised in your case versus Virginia Schertie, what was the language in the agreement that was different in each of yours and the Virginia casualty? The Virginia Schertie decision? I was just checking. You were doing the talking thoughts that were talking to you. Oh, the inclusion of the any and all language that we have in our in-store merchandising agreement was not present in the Virginia Schertie decision. The more recent Waynes case that we cited to have that same any and all decision or that same any and all language that we have here, which is all-encompassing language that the Supreme Court recognized may be an indication that there was an intention to indemnify one for one's own negligence, for another's own negligence, and that was not in the Virginia Schertie decision, in the Virginia Schertie contract. Well, it was clear that that particular language does not mandate that you have an insured contract. Is that correct? That is correct. You have to look at the other surrounding circumstances to determine the intent of the party, and if you do find an insured contract, the language has to be clear, definite, and unambiguous. Absolutely. But they did also acknowledge that the use of the any and all language in the contract may be an indication that there was an intent to indemnify another party for that party's own negligence. They did acknowledge that, and then after that decision, the Nightcore v. the Village of Wilmette case ruled consistently with that in finding that the any and all language was all-encompassing and was an intent absent additional limiting language in that contract. The use of the any and all language was an intention by the parties for the indemnitor to be indemnifying the indemnity for the indemnity's own negligence. And I think that is a critical distinction between what we had in the Virginia surety contracted issue there and what's presented in this case. And I think also going back to the fact that for purposes of insurance coverage and a duty to defend, I think it is very critical that that was just a one-count contribution action and not an action for an express indemnification because, again, under no circumstances in that case was there a risk that the third-party defendant was going to be held liable for the tort liability of another. We do have that presented in this case. In the abstract, aren't we supposed to construe these types of provisions against indemnification of the indemnity's own negligence, barring some clear language that it encompasses that per Westinghouse? Yes, Your Honor, you're supposed to. But I think in that case it also focused on whether or not there was some limiting language, and we don't have that here. I'm trying to put all the pieces together, clear language, limiting language, whatever. Is it your argument that in this case we have clear language that covers the indemnity's negligence because of the any and all provision? I think that coupled with the wholly or in part language. I think that if you look to wholly or in part language, PMR is necessarily agreeing to indemnify Home Depot for damages caused wholly by PMR, but also in part by PMR. And by saying in part by PMR, it necessarily means that PMR is agreeing to indemnify Home Depot for tort liability, which is not its own. Is the whole and in part concept itself not definitive with respect to finding that there's a contract that you look at it again, you have to look at the whole agreement to determine exactly what the parties intended relative to there being a contract, a domestic contract? Absolutely. It's not dispositive. It is not in itself dispositive. I believe it's the wholly in part language coupled with the any and all language and lack of any limiting language to suggest that there was an intention to limit PMR's indemnification obligation, which we just don't have here. And then again, going back to Virginia's survey, taking a look at this from a coverage standpoint, and the fact that there's the potential that PMR is going to be held liable for the tort liability of Home Depot if they're faced with a contractual indemnification count here. I mean, whether or not the court in the underlying case ultimately finds that PMR has to indemnify Home Depot for Home Depot's own negligence is an entirely separate issue. And it is an issue to be cited by the underlying court. But as it stands right now, there is the potential that PMR will be held liable for the tort liability of Home Depot based on the terms of that contract. And in its very essence, that defines the duty to defend. The potential is there such that the general casualty does have the duty to defend. Could you see the wholly and in part language as being limiting language? If you were on the other side, could you see that argument? Or perhaps the other side will argue this. But that is actually limiting language that shows that there has to be at least some negligence on the part of the indemnitor. That's an argument that can be made. But I think that the wholly and part language, I think that you have to look to each of the separate indemnification obligations on the part of PMR and the in-store merchandising agreement. And in Part A, it just simply says service groups, PMR's provision of services. There's no limiting language in that portion. So each one of these, really, we need to give effect to each one of these separate indemnification obligations. So in itself, Part A right there has no limiting language. So even if, I don't believe the wholly and part is limiting language necessarily, but even if this court were deemed that to be limiting language, that would only apply in connection with their separate indemnification obligation in Subsection B. And you look at Subsection A, there's just- So what you're saying is if Home Depot dug a hole and put a little rug over it, and PMR's employee was walking around the store and fell into this negligently placed hole, that that would still be covered because PMR was providing services at the time? Yeah. The claim would, I mean, the argument is that the claim arose from PMR providing services? Yeah. I think that this could be construed broadly enough to include that indemnification for those services. So the provision of services has nothing to do with the hole, the nature and extent of the hole, where the hole was located, or whether this person who was employed by PMR was there in the scope of their employment, or was there to buy a LED light bulb for $50? I think that that would ultimately be a decision. The scope of this indemnification language, for purposes of liability, would be a decision by the underlying court. And for purposes of reading it in the context of whether or not it's broad enough to include an agreement to indemnify one for another's own tort liability, I think Section A is exactly what we would have. Any other questions? No further. Okay. Okay, thank you. You'll have a chance to make a proposal. Thank you. All right. Can I comment or respond? Well, it says here that you're an appellee, correct? Appellant. Appellant. What is it that you wish to comment on? Well, it's simply that I'd obviously be very brief. I agree with counsel that subparagraph A is itself a distinct provision, which does not have any limiting language. Subparagraph A, when connected with the words any and all and arising out of, is a very broad provision, which requires the indemnitor to indemnify a Home Depot for its own maintenance. And that's a significant distinction here. And, again, it is not necessarily tied to any conduct. That provision, A, is not tied to any conduct on the part of the indemnitor, which would potentially under perhaps Virginia surety, a construction of Virginia surety. Could you step up to the microphone? Oh, I'm sorry, Your Honor. Perhaps in connection with the construction of Virginia surety would be some type of indemnity language. Limiting language, excuse me. There is no limiting language with respect to subparagraph A. And, consequently, I guess it could be argued, and my argument in part would be, that this indemnity provision can be in part arguably a Kentucky waiver, but another part of the indemnity language is, in fact, a true indemnity provision and, therefore, enforceable as an insured contract. Getting back to the fact situation presented a moment ago, clearly if the worker was engaged in some activity in connection with his employment and falls in this rug-slash-hole in the ground, that would then be arising out of the provision of services. If he's there on a Sunday with his wife and has no connection with his work, then that incident did not arise out of the provision of services. And without going into it, obviously, the arising out of language is key and certainly broad. So I think my point is I think we could potentially have two applications of this indemnity provision, one that is potentially a Kentucky waiver and one that is clearly an indemnification for Home Depot's alleged own negligence. Thank you. Any questions? Well, the language today refers to any claim resulting directly or indirectly from the contract or action of PMR, its employees, quote, agents or contractors. The insurance, if an insurance agent for PMR comes in and falls in the hole, are they recovered? On the indemnity provision, if an insurance agent, I'll have to think about that. If the agent is an agent of PMR and we're referring to subparagraph A. An agent for some purpose other than working on the job at Home Depot. I understand. But that's, again, referring to the language in subparagraph E and not the language in subparagraph A. And under those circumstances, the argument could be made that it would be an indemnification obligation and certainly there would be perhaps an argument under Virginia surety for another construction. But it is different than and separate and apart from and should be construed independent of subparagraph A. And so what I'm looking for is, and my argument simply is that subparagraph A, when construed as part of the contract, has to be given meaning. And when given meaning, our conclusion is that it means an indemnification for the services, which is broad. It's essentially a but-for causation, but-for argument versus approximate cause argument. So there's no connection with the acts or omissions of PMR under subparagraph A. The only connection is the presence or provision of services. And that is essentially similar, at least conceptually, to both GWENs and NICOR. So I'm certainly emphasizing without trying to suggest something otherwise with respect to the other paragraphs, I'm suggesting that subparagraph A is the operative paragraph with respect to the indemnity obligation. And your focus is primarily on the language ending in all loss and arising out of it. Is that correct? That's correct, Your Honor, in my interpretation. Without any further restriction on that agreement? Without, yes, without any limitation, and therefore it's consistent, mind you, with GWENs. Okay, thank you. Thank you, Your Honor. Mr. Cahill. May it please the Court, David Cahill on behalf of the Appellee General Casualty Company of Illinois. The Virginia surety case included the language in whole or in part, which counsel for the appellant relies upon in support of her argument, that this indemnity provision in the PMR Home Depot case is somehow different. I suggest to the Court, as I did to the trial court, it is substantively not the least bit different. With respect to which part of this indemnity agreement applies to this case, the accident relating to Terrence German, it is subparagraph B, which specifically references actual or alleged injury or death to persons. That is what we're dealing with. We have a bodily injury case, a claim, a lawsuit. That is the subparagraph which applies. It's a well-settled principle in Illinois, including precedence of the Second District Appellate Court. Specific provisions in a contract are entitled to more weight in ascertaining the party's intent than general provisions. That was a holding of the Second District in Premier Title Company v. Donahue, 328 LF 3rd 161, relying on precedent. And it's also the holding of the Second District in R.W. Dunton & Company v. Village of Lombard, 281 LF 3rd 929. So I would respectfully submit that for the German incident, the German injury, what we're talking about is subparagraph B. And clearly, under the Illinois Supreme Court holding in Virginia Surety, as well as its holding in Westinghouse, 395 LF 429, Tater, 54 LF 64, and Zaydeck, 59 LF 118, we are not dealing here with a provision pursuant to which Home Depot is being indemnified for its home negligence. This indemnity provision in subparagraph B specifically requires that the injury be caused by PMR. That is precisely the type of limiting language that means it's not indemnification for the indemnity's own negligence. If we were to find that subparagraph A applies or could apply to this situation, do you agree that there's no limiting language in that limiting it to the conduct of PMR? No, I do not. And I base my statement, Your Honor, on the Gwenz case, B-U-E-N-Z, which is another Illinois Supreme Court case cited in the briefs, and on Westinghouse, Tater, and Zaydeck. What the courts, I try to read all of these cases, particularly the Illinois Supreme Court case, and have a takeaway from that. In a given case, how is the Illinois Supreme Court determining whether or not it is a true indemnity agreement? And a true indemnity agreement, in layman's terms, is your flat-out agreement to indemnify another person or entity for that person or entity's own negligence. This in-store agreement was a Home Depot-drafted contract. Any ambiguities in it have to be construed against Home Depot. The courts, historically, have always been very strict in their construction of indemnity provisions, pursuant to which one is claiming they're entitled to indemnity for one's own negligence. It's actually against the public policy of the state of Illinois when it comes to construction work, when it comes to health care. In other areas, it's not outlawed by statute, but it is, nonetheless, very, very strictly construed. And I think what Home Depot could have done is simply written into this contract, it's a sophisticated entity to say the least, that PMR would indemnify Home Depot for Home Depot's own negligence. Now, to be even more responsive to your inquiry, Your Honor, any time one of these indemnity provisions contains language which references the need that the indemnitor cause the injury or be at fault or that it relate to the work of the indemnitor, in those types of scenarios, the courts construe those as not indemnifying the indemnity against the indemnity's own negligence. They construe those types of agreements as nothing more than the indemnitor agreeing to pay the indemnity for liability caused by, for basically the liability, the pro rata share of the liability of the indemnitor. I mean, that's the takeaway from the Virginia surety case. And the argument, with all due respect, the argument that the Illinois Supreme Court decision in Virginia surety is somehow distinguishable because that case happened to involve a one count cause of action for contribution, whereas we're dealing in the German case with a three count cause of action in the underlying suit. Contribution, contraction, indemnity, and breach of insurance procurement. That's a distinction without a difference. The reason the Illinois Supreme Court decided the insured contract issue in Virginia surety is they were dealing with the exact same policy exclusion that is among our exclusions, namely the employer liability exclusion. CGL policies do not, as a matter of general statement, cover employees for injuries. That's why they have workers' comp insurance, and that's the place of Virginia surety. Virginia surety insures PMR for its liability for injuries to its employees, including liability on third party actions. CGL policies have a very narrow exception to that. The narrow exception is the exclusion for employee injuries only applies, only applies, I'm sorry, the exclusion for employee injuries does not apply in only one circumstance. And that's the very narrow circumstance that there has to be an insured contract as defined by the policy. And we simply do not have that in this case. The use of the any and all language, which counsel argues about, that was specifically repudiated by the Illinois Supreme Court in the Gwen's case. Specifically, I'm quoting, it is not simply the use of the phrase any and all that determines whether a particular contract provides indemnification for an indemnity zone negligence. The phrase must be read in the context of the entire contract. So it's my position and the position of my client, Your Honors, that we should prevail based upon the employee exclusion, otherwise known as the employer liability exclusion, and the contractual liability exclusion because the insured contract exception doesn't apply. And this has been addressed by the Illinois Supreme Court. I mean, I have put up the language of these two agreements, the one addressed in Virginia surety and the agreement at issue in our case side by side. And both of them, you know, other than the use of the word negligent in the Virginia surety case, it's basically the same language. And again, in our case, we have the requirement that PMR cause the injury, which is precisely the type of limiting language that makes this not an insured contract. So I don't see anything comparable to some paragraph A in this Virginia surety contract, where it's just this open-ended provision of services. It seems to all be tied to the negligence of the indemnitory and Virginia surety. Do you see anything like subparagraph A that's just simply provision of services? No. No, you're correct. But that, again, my first contention is that A doesn't even apply here. B has to apply. I mean, please understand, there are multiple instances where there might be reason for indemnity other than injury to a person. Property damage, you know, other casualty type situations could arise, contract actions. I mean, the list is almost limitless. So this is a indemnity provision that is designed to address instances and situations that have nothing to do with personal injury. But go away from the Virginia surety case for a moment. And I think the Blends case did an excellent job of discussing the interpretation of these provisions and whether or not an indemnity agreement is or is not an insured contract. And it would be my position that even if this particular case was not limited to subparagraph B, which I believe it is, even if we went to A, there's still limiting language there. For example, in the Tadar case, 54 Illinois 2nd 64, the Illinois Supreme Court held that it did not, there was no indemnity for the indemnity's own negligence, where the indemnity clause covered all expenses, claims, suits, or judgments by reason of, arising out of, or connected with accident injuries or damages which may occur upon or about the subcontractor's work. In Zadak, 59 Illinois 2nd 118, no indemnity for indemnity's own negligence where language referred to claims arising out of any such work, such work being that performed by indemnities or employees under the contract. So Zadak would hold that subparagraph A is not indemnification for one's own negligence. I'll say it again. This is Zadak. It is not indemnity for the indemnity's own negligence where the operative language is indemnification for claims arising out of any such work, such work being that performed by indemnities or employees under the contract. Counsel argues, well, Mr. German works for PMR, he's at Home Depot erecting these shelving units which are about 12 feet tall and that's all part of a contract, it's all part of a service, and somehow now this can be construed as indemnifying Home Depot for its own negligence. It can't. This should be strictly construed, this contract, against Home Depot and under well-settled Illinois law precedent, this is not a true indemnity agreement. For example, if it was a true indemnity agreement, there wouldn't be a requirement in B that this be caused by PMR because there could be a situation where, it might even be this case, where someone employed by PMR is injured on the site and PMR is not causally responsible in the least for that. I mean, that's a fact issue, but I'm just pointing out that it is not a true indemnity issue. A true indemnity, I'm sorry, it's not a true indemnity agreement. A true indemnity agreement doesn't have limiting language like that. In a true indemnity agreement, the indemnity order says, I'm indemnifying you, including liability arising out of your own negligence. Or I'm assuming all of your tort liability, including liability based on negligence due solely to your own negligence. That's a true indemnity agreement. And that's not the agreement between these parties. Assuming if you had an insured contract, then it, again, would not be a true indemnity agreement. Well, Your Honor, by definition, an insured contract is a true indemnity agreement. What an insured contract is, is one entity agreeing to assume the tort liability of another. All we have here is PMR agreeing to pay for its own pro rata share of the liability. This is like, respectfully, the dissent in West Bend, and this is exactly what was decided in Virginia surety. And, again, why did the court in Virginia surety get into this? Because the only exception to the employer liability exclusion is if it's an insured contract. That's why they looked at it. It didn't matter whether it was a contribution action or an indemnity action. They had to look at the contract. They're interpreting an insurance policy. That's what they did, and the precedent supports my claim, and respectfully, Judge Wheaton's order granting summary judgment in favor of general casualty and denying Virginia surety's motion should be upheld. You said something to Justice Bowman, and it raised a question in my mind. You said that an insured contract is one in which tort liability is assumed. Of another, yes. Could an insurance contract or an insured contract assume the contractual liability instead of tort liability? By definition, Your Honor, in the policy. No, I'm not talking about this policy. I'm talking about in the abstract. If an insured contract is a contract of insurance to insure someone for their own vices, defects, foibles, why limit it to tort liability? Why wouldn't it relate to anything else? All right. Okay. I'm going to try to respond. My client's insurance policy is a contract. This is hypothetical, so it doesn't have anything to do with what your policy says. My point is, is that if I am entering into a contract to indemnify you, why in the abstract couldn't I agree to indemnify you for things other than your negligence? Couldn't I? Freedom of contract, I suppose. I don't. In the abstract, yes. I think parties, unless there's some prohibition in the law against a particular contractual provision, like indemnifying one for one's own negligence in a construction type situation. We never got to that issue in this case, by the way. Judge Wheaton never reached it. But short of something like that, yeah, I think you could do that. But in our case, I just want to make the point, insured contract has quotes around it in our policy, and it's defined. And it's defined as assuming the tort liability of another. So it's limited to tort liability. In our case. Thank you, Your Honor. Ms. Anderson? Thank you. I just have two brief points. One of the positions taken by general casualty is that in this case only subsection B. Could you speak into the microphone, please? I'm sorry. That only subset, one of the positions taken by general casualty is that only subsection B of the in-store merchandising agreement of the indemnification portion is implicated here. On page 226 of the record, it's the third-party complaint, the contractual indemnification count against PMR, which specifically lists subparagraph A of the indemnification agreement as one of the paragraphs, one of the provisions of the agreement upon which Home Depot is seeking to enforce. Additionally, with regard to subsection A, it is entirely distinguishable from Virginia surety because it is not tied to the negligence of the indemnitor. So even if this court were to conclude that there was limiting language in the remaining portions of the indemnification agreement, the fact is, is that Home Depot is seeking to recover for express indemnification on subsection A of the indemnification agreement, which has no limiting language, which should be construed as seeking to be indemnified for its own tort liability. Leaving open the possibility that the underlying court may find PMR liable for Home Depot's own negligence, thereby triggering general casualty's duty to defend for the allegations against its named insured in this matter. His argument is, though, that subparagraph B would apply over anything else because that's the only one that talks about injury, and injury was involved in this case. And the more specific provision would apply over the more general case law. Ultimately, the court may find that only subsection B is applicable here. But as of now, based on the pleadings, subsection A is at issue. And with the duty to defend, if the allegations of the underlying complaint even bring in the potential that coverage may be, the duty to defend is triggered then. So regardless of what ultimately ends up being the operative provision of this indemnification agreement, as of now, subsection A is being, they're seeking recovery under subsection A. What do you think the word gross negligence means? It's subparagraph B by Home Depot? It's the indemnity in paragraph 12, where Home Depot agrees to indemnify, defend, and hold harmless for anything arising from its gross negligence or willful misconduct. Do you see where I'm reading? I don't, I apologize. Can you say that again, where you're reading? From the indemnification, the in-store merchandising agreement? Yes, I believe so. Paragraph 12. Paragraph 12. The in-store merchandising agreement contains an indemnity provision which states in part, 12B, Home Depot shall indemnify, defend, and hold harmless PMR and its officers, employees, and agents against any and all loss, damage, claim, lawsuit, etc. to the extent arising from the gross negligence or willful misconduct of Home Depot. So what does gross negligence mean? Or maybe a better question would be, how could this be an insured contract if Home Depot is agreeing to be liable for its negligence or willful misconduct? It seems like the argument today was concentrating on A, which is what PMR was agreeing to do, but I don't know that I've heard, if it was mentioned, I don't recall that B places some duties on Home Depot to make compensation to indemnify and hold harmless. So maybe this is a mutual insured contract? Well, there could be reciprocal provisions within the same. I've never heard of one where it's a mutually insurance or a mutually insured contract. It seems to be something of either a contradiction or a paradox where you agree to hold him harmless and he agrees to hold you harmless. So everybody's harmless? That sounds more like an uninsured contract than an insured contract. It's a contract of uninsurance. I think indemnification provisions are often reciprocal, but I don't think that precludes a party from, as they are in this case. Indemnification agreements are often reciprocal? Yes. Explain, please. There's often provisions in contracts pursuant to which other parties agree to indemnify one another, even for the other's own negligence. For the same thing or for different things? Often for the same thing. Give me an example, please. Like in this instance, are both parties agreeing to indemnify the other for the other person's negligence? No. In this situation, PMR has agreed to indemnify Home Depot for Home Depot's own negligence. You don't have that statement. And what has Home Depot agreed to indemnify PMR for? Something separate from, however the underlying court would determine gross negligence should be interpreted, which is separate from anything arising out of the PMR's provision of services. Okay. Any other questions? Did you have any other comments? Because you have some time available, and I figured if you're done, Mr. McGinnis. My comments, again, are brief. Prior to the Buens case, I think there was a general understanding, and I only speak for myself, of course, that the expression of an agreement to indemnify one party for that party's negligence had to be, as Westinghouse said, express, unequivocal, very clear. The Buens case, I think, changes the landscape a little bit on that, although it may have ultimately been the intention all along. But for some, it now makes it clear that that expression of an agreement to indemnify someone for their other negligence is contained, or is the intent is shown through the words, any and all. There was apparently a case that predated Buens that cited it for the same proposition, although I think typically when you are confined with that type of an argument, if the language was not fairly clear and very express, then the inclination was to say that's not an agreement to indemnify one for their own negligence. Buens, I think, I don't know that it expanded it, but certainly explained it better in terms of the kinds of language that was seen in indemnity agreements. And that's what we have here. Counsel's suggestion that only B applies, I don't think, is appropriate because I think the language, not to repeat myself, but to repeat myself, the language of the contract as a whole has to be given some meaning. And our language, the business about comparing one indemnity agreement to another, those of us, I mean, I've done it myself several times, and you go through this myriad of cases and you try to bounce back and forth and see the distinctions or the reconciliations, and Buens itself says, you know, that's a good exercise and you can draw some meaning from it, but ultimately it's kind of a futile exercise because you have to look at the context, the actual language in the contract in front of you, and the circumstances, the factual circumstances, because in one of these cases, Tartar, I think, was involved where the indemnity was the party that dropped lumber on top of the indemnitor's employee. So I think that was a consideration in reaching that result. Same thing in the Cannon case where I think it was a forklift. So that's actually an aspect of it. In our case, the allegations are that home people did something, but I think the factual stuff that supports it remains to be determined in the underlying case. So I just want to emphasize that. And, again, I guess ultimately it's I think that the any and all makes, again, doesn't change the landscape, but it certainly makes it's viewable through a clear lens by people that have to try to work with these indemnity agreements. Thank you. Thank you. Okay, so we've taken under advisement.